# HOUSE OF SEAGRAM, INC., Appellant v. ASSAM DRUG COMPANY, Respondents

## (176 N.W.2d 491)

(File No. 10662. Opinion filed April 16, 1970)

**Willy, Pruitt & Matthews, Acie W. Matthews,** Sioux Falls, for plaintiff and appellant.

**Myrabo & Weisensee, Tony Weisensee,** Canton, **John A. Shaeffer, Flandreau,** for defendants and respondents.

HOMEYER, Judge.

This action was brought by the plaintiff to permanently enjoin the defendants from advertising, offering for sale, or selling certain alcoholic beverages distributed by it to South Dakota wholesalers and bearing the Calvert name, brand, or trademark, at less than minimum retail prices which it had established or would thereafter establish for such products pursuant to the South Dakota Fair Trade Law, SDCL 37-9.

The question presented for determination by this appeal is the constitutionality of such law as it pertains to nonsigners of "fair trade" price maintenance contracts. The court below held the Fair Trade Law unconstitutional and denied the injunction. Plaintiff has appealed.

There is little dispute in the facts. Plaintiff, the House of Seagram, Inc., acting through its Calvert Distillers Company, Central Division, is the exclusive distributor to wholesalers located in South Dakota of alcoholic beverages, bear-

ing the Calvert name, brand, or trademark which it either owns or controls. It sells only to its wholesalers in South Dakota who in turn sell directly to retailers among whom are the defendants. Calvert products are advertised, distributed and sold in South Dakota in free and open competition with similar products of the same general class distributed and sold by others in the state.

Plaintiff entered into "fair trade" price maintenance contracts with various retailers doing business in South Dakota, but not with the defendants. Minimum retail sales prices for Calvert products were established by plaintiff and the defendants were given notice and had knowledge of such prices. They have willfully and knowingly advertised and offered for sale and sold Calvert products at less than the minimum prices established by plaintiff under the "fair trade" law and such acts are not within any exceptions contained in the law.

South Dakota enacted a Fair Trade Law in 1937[1] and its constitutionality was almost immediately attacked. By its decision in Miles Laboratories, Inc. v. Owl Drug Co., 1940, 67 S.D. 523, 295 N.W. 292, this court upheld the law largely upon the ground that it did not violate Art. XVII, § 20 of the South Dakota Constitution, commonly known as the anti-trust and anti-monopoly clause. Incidental mention was also made of Sections 2 (due process) and 18 (privileges or immunities) of Art. VI. Contention that these sections were violated was said to be without merit with minimal discussion. The court said Fair Trade Laws had been enacted in 44 states and upheld in all instances when submitted to courts of last resort including the Supreme Court of the United States. Old Dearborn Distributing Company v. Seagram-Distillers Corporation, 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476 is cited as well as decisions from state courts in California, Illinois, New York, New Jersey, Wisconsin, Maryland and North Carolina.

---

1. S.L.1937, Ch. 126.

The pattern of upholding the law appears to have continued, seemingly influenced by the Old Dearborn decision,[2] until 1949 when the Florida Supreme Court decided to depart from precedent and held its Fair Trade Law unconstituitional as an unreasonable exercise of the police power. Liquor Store, Inc. v. Continental Distilling Corp., Fla., 40 So.2d 371. Since then many more states have done likewise on the same or other grounds. See Annot., 60 A.L.R.2d 420, Validity, under state constitutions, of nonsigner provisions of Fair Trade Laws and the Later Case Service Supplement thereto. Also an article on this topic appearing in the South Dakota Law Review, Vol. 13, page 113.

An excellent history and analysis of the Fair Trade Law is contained in Bulova Watch Company v. Zale Jewelry Company of Cheyenne, 1962, Wyo., 371 P.2d 409. It need not be repeated here. The author of the opinion says 46 states had fair trade laws similar or identical to the Wyoming Fair Trade Law when the opinion was written. Seventeen states had held the law constitutional. Twenty states had held it unconstitutional. Six states were without decisions thereon. Four states had enacted no fair trade laws. Nebraska had held its Fair Trade Law unconstitutional and then it was repealed by the legislature so it had no fair trade law. Virginia was considered in an uncertain category.

Since the Wyoming opinion, Ohio which originally had held its Fair Trade Law unconstitutional, after an amendment in 1959, has held it constitutional.[3] Pennsylvania which

---

2. In what appears to be the first case involving a "fair trade" law, decided January 7, 1936, the New York Court of Appeals held the law unconstitutional as an unlawful delegation of price fixing power. Doubleday, Doran & Co. v. R. H. Macy & Co., 269 N.Y. 272, 199 N.E. 409. Old Dearborn was decided on December 7, 1936. On March 9, 1937, the New York court reversed itself in Bourjois Sales Corp. v. Dorfman, 273 N.Y. 167, 7 N.E.2d 30. This is discussed by Chief Justice Condon in his dissenting opinion in United States Time Corp. v. Ann & Hope Factory Outlet, Inc., 1964, R.I., 205 A.2d 125.

3. Olin Mathieson Chemical Corp. v. Ontario Store of Price Hill, Ohio, Inc., 1967, 9 Ohio St.2d 67, 223 N.E.2d 592.

is listed as upholding the law has since reversed itself.[4] Making current the line score and computations so painstakingly prepared by the author of the Wyoming opinion it appears that there are now 22 states which have held Fair Trade Laws similar to the South Dakota Act unconstitutional and 17 states which have held them constitutional. Five states[5] have no fair trade law. Four states[6] are without decision and two states, Virginia and Ohio, because of changes in statutes, should not be classified.

After a careful review of Miles Laboratories v. Owl Drug Co., supra, we are convinced that our decision in that case as it applied to nonsigners of price maintenance agreements is erroneous. We thus join Washington and Pennsylvania as jurisdictions which have receded from prior holdings with respect to the Fair Trade Law. We believe, as the Pennsylvania court did, that our former decision may have been influenced and perhaps prompted by Old Dearborn and the Act upheld largely by relying on that decision as precedent. We approve what the Pennsylvania court said in Olin Mathieson Chemical Corp. v. White Cross Stores, Inc., supra, 199 A.2d at page 267:

> "Old Dearborn, as a careful study will bear out, is not precedent for the proposition that the nonsigner clause in a state price fixing statute, delegating legislative power to private individuals, does not violate the state constitution. See, 1 Davis, Admin-

---

4. Olin Mathieson Chemical Corp. v. White Cross Stores, Inc., 1964, 414 Pa. 95, 199 A.2d 266.

5. Alaska, Missouri, Nebraska (repealed), Texas and Vermont.

6. Alabama,* Idaho, Maine and North Dakota. Since the Wyoming decision, Nevada in Zale-Las Vegas, Inc. v. Bulova Watch Co., 1964, 80 Nev. 483, 396 P.2d 683, held the law unconstitutional and Rhode Island in United Time Corp. v. Ann & Hope Factory Outlet, Inc., supra, held it constitutional.

   *In Bulova Watch Co. v. Zale Jewelry Co., 274 Ala. 270, 147 So.2d 797, the Alabama court held their law unconstitutional as to sale of watches because such business was not affected with a public interest and beyond the state's police power.

istrative Law Treatise, Section 2.14 (1958); Note, Fair Trade and the State Constitution—A New Trend, 10 Vand.L.Rev. 415 (1957), and Conant, Resale Price Maintenance, Constitutionality of Non Signer Clauses, 109 U. of Pa.L.Rev. 539 (1961)."

■ Old Dearborn stands for the proposition that fair trade laws such as we had in this state are not in violation of any of the provisions of the federal constitution. However, manifestly the question remains for us to decide whether it offends any of the provisions of our own constitution and we are under no compulsion to follow the United States Supreme Court in that regard. Zale-Las Vegas, Inc. v. Bulova Watch Company, supra. As the court said in Cox v. General Electric Co., 211 Ga., 286, 85 S.E.2d 514, 519, the determination of whether the Fair Trade Law violates the constitution of Georgia "is one of the few powers left to States to decide for themselves regardless of what the Supreme Court of the United States may or may not have decided."

In jurisdictions where fair trade acts have been held unconstitutional it was generally on grounds that legislative power had been unlawfully delegated or that they constituted an improper use of the police power and bore no reasonable relationship to public health, safety or welfare. Sometimes courts have held that they violated both or for other or additional reasons.[7] We choose to predicate our decision on an unlawful delegation of legislative power. In so doing we recognize a considerable number of state courts have held to the contrary and have cited Old Dearborn as precedent. They appear in the annotation cited supra. However, we agree with the Minnesota court in saying that to us those authorities seem unsound.[8]

---

7. Precedents from other jurisdictions are listed in Bulova Watch Co. v. Zale Jewelry Co., Wyo., 371 P.2d 409, 413, 414, and Wilke and Holzheiser, Inc. v. Dept. of Alcoholic Beverage Control, 65 Cal.2d 349, 55 Cal.Rptr. 23, 420 P.2d 735, 740, f.n. 13, 757, 758, f.n. 4 and need not be repeated here.

8. Remington Arms Company, Inc. v. G.E.M. of St. Louis, Inc., 257 Minn. 562, 102 N.W.2d 528, 535.

■ ■ Regulation of wages and prices is a legislative function to be exercised by an elected legislative body. The power and authority to do so may be delegated to other governmental officers or agencies to a limited extent provided understandable standards are adopted to guide the officer or agency in the exercise of that power. Art. III, Section 1, Constitution of South Dakota; Boe v. Foss, 76 S.D. 295, 77 N.W.2d 1; Livestock State Bank v. State Banking Commission, 80 S.D. 491, 127 N.W.2d 139. However, the legislature may not delegate to private persons discretionary power to fix wages, prices or rates. Any attempt to do so creates a new and private government and violates an essential concept of our democratic society and is constitutionally invalid. Schryver v. Schirmer, 84 S.D. 352, 171 N.W.2d 634; Application of Northwestern Bell Telephone Co., 69 S.D. 36, 6 N.W.2d 165; Quality Oil Co. v. E. I. Du Pont De Nemours and Company, 182 Kan. 488, 322 P.2d 731. Thus, acting without a hearing and without judicial review permitted, private groups could oppress an unwilling minority to the full limit of the power delegated. One of the main grounds for holding unconstitutional the National Industrial Recovery Act was that it delegated to private industry trade groups the power to fix wages and prices in the poultry slaughtering industry. A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570. Concerning this power, Chief Justice Hughes wrote at page 537, 55 S.Ct. at page 846:

> "But would it be seriously contended that Congress could delegate its legislative authority to trade or industrial associations or groups so as to empower them to enact the laws they deem to be wise and beneficent for the rehabilitation and expansion of their trade or industries? Could trade or industrial associations or groups be constituted legislative bodies for that purpose because such associations or groups are familiar with the problems of their enterprises? And could an effort of that sort be made valid by such a preface of generalities as to permissible aims as we find in section 1 of title I? The answer is obvious. Such a delegation of legislative power is unknown to our

law, and is utterly inconsistent with the constitutional prerogatives and duties of Congress."

■ ■ When the power to regulate prices is delegated to a governmental officer or agency constitutional procedures must be adhered to. Affiliated Distillers Brands Corp. v. Gillis, 81 S.D. 44, 130 N.W.2d 597. The action of the agency must be legislative in character and meet the same tests and standards of any legislative enactment. Once basic structure of a law is established the legislature may delegate to the officer or agency the power and responsibility to promulgate detailed rules for the statute's operation. Application of Dakota Transportation, Inc., of Sioux Falls, 67 S.D. 221, 291 N.W. 589. Such rules can only be adopted after a hearing and must be subject to judicial review to assure procedural due process of law. St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033.

The above were all found absent by the Pennsylvania court in their Fair Trade Law and are also absent in the South Dakota Fair Trade Law. That court in Olin Mathieson Chem. Corp. v. White Cross Stores, Inc., supra, 199 A.2d at page 268 said:

"Fair hearing and judicial review are not available, even though the fixed price is grossly unfair or completely arbitrary. The retailer and the buyer have no recourse. The producer enjoys the unbridled power to stipulate the price he pleases and at that price the retailer must sell and the buyer must buy. In this respect, the producer is the unrestrained sovereign. No intelligent standards control.

"It is no answer to the above to say that the retailer and the buyer, having notice of the prices fixed, are under no obligation to sell or buy the particular commodity. Under the statute, both come under the coercive price control of private persons not directly in contract with them."

The same thinking was expressed earlier by our neighbor Minnesota in Remington Arms Co. v. G.E.M. of St. Louis, Inc., supra, 102 N.W.2d at page 535:

"In considering the justification for reposing this authority in the trade-mark owner, the real character and purpose of the Fair Trade Act should be examined. Its ostensible justification is to compel adherence to fixed prices so as to protect against debasement the goodwill of tradename commodities. Although this property right may be constitutionally protected, as witness the Old Dearborn decision, an examination of the great number of authorities and the vast literature by way of reviews and reports dealing with the subject compels the conclusion that the real impact of the law is in the area of price fixing.

"If we realistically appraise the act for what it is, it should be recognized as a selective price control act which leaves to the manufacturers of trademark products the arbitrary right to determine if and when it shall take effect. No standard or yardstick is provided by which such prices are to be determined. It grants to a private party the privilege of creating a right of action for its own benefit or suspending that right at its will. No hearing is provided for to safeguard or protect the unwilling retailer or the consumer.

"Thus by virtue of the nonsigner clause the private party in effect may regulate prices as it sees fit. Since one manufacturer and one retailer may fix prices for all retailers, they have the complete power to fix prices regardless of anyone's interest but their own."[9]

Further discussion of opinions from states which have rejected fair trade laws or from those which have approved

9. See also Bulova Watch Company, Inc. v. Robinson Wholesale Co., 252 Iowa 740, 108 N.W.2d 365, where this language of the Minnesota court was quoted in part and approved.

them would add nothing to this opinion. As the annotator wrote in 60 A.L.R.2d at page 423: "Decisions in the various jurisdictions are not merely opposed in result but are completely irreconcilable. On virtually every conceivable constitutional question there is strong authority on both sides." We have decided to change positions in the firm belief that our decision in 1940 was wrong and emerged under conditions and circumstances when our economy seemingly required drastic measures which time shows to have been ill conceived.[10]

Counsel urge that we should not overrule Miles Laboratories v. Owl Drug Co., supra, because it has stood as the law of this state for nearly 30 years[11] and overruling that decision may cause hardship upon manufacturers, producers and distributors, who have relied on it. We seriously doubt that this apprehension is justified in our present day competitive economy, but in any event such is no reason to perpetuate an erroneous decision.

■ The nonsigner provision in the Fair Trade Law, SDCL 37-9-12, is declared constitutionally invalid as an unlawful delegation of legislative power to private parties. Miles Laboratories v. Owl Drug Co., supra, insofar as it holds valid the nonsigner clause of such law is overruled.

Affirmed.

All the Judges concur.

---

10. See Home Owners' Loan Corporation v. Oleson, 68 S.D. 435, 3 N.W.2d 880; Berens v. Chicago, M., St. P. & P.R.R. Co., 80 S.D. 168, 120 N.W.2d 565.

11. Owl Drug is the only case where the court has heretofore considered the constitutionality of the Fair Trade Law. Unconstitutionality was urged, but not decided in House of Seagram, Inc. v. Assam Drug Company, 83 S.D. 320, 159 N.W.2d 210, decided on May 24, 1968.