STATE of South Dakota, Plaintiff and Appellee,

v.

Rosendo Deleon SAIZ, Defendant and Appellant.

No. 15928.

Supreme Court of South Dakota.

Considered on Briefs March 21, 1988.

Decided Aug. 3, 1988.

Rehearing Denied Sept. 8, 1988.

Richard D. Coit, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Neil Carsrud of Bennett & Main, P.C., Belle Fourche, for defendant and appellant.

WUEST, Chief Justice.

Defendant, Rosendo Saiz, appeals his conviction on various drug charges. We affirm.

In January, 1987, the Butte County Sheriff and State's Attorney received information from a confidential informant that defendant had possession of one-half ounce of cocaine. According to the informant, the drugs would either be on defendant's person, in his red Chevrolet pickup, or in his Belle Fourche trailer home.

The sheriff and the state's attorney prepared affidavits in support of a search warrant. The sheriff's affidavit described the place to be searched and the items to be seized and further stated that the informant was "reliable." The state's attorney's affidavit stated that the informant had been "trustworthy and accurate" in the past.

The sheriff and the state's attorney presented the affidavits to a circuit judge who issued a search warrant. A search conducted pursuant to the warrant disclosed hashish, nine grams of cocaine, and drug paraphernalia.

After a suppression hearing, the trial court determined the search warrant was invalid. The trial court, however, held the evidence was admissible under the "good faith" exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), *reh'g denied*, 468 U.S. 1250, 105 S.Ct. 52, 82 L.Ed.2d 942 (1984).

After a trial to the court, defendant was found guilty and was sentenced to thirty days for possession of less than one ounce of marijuana, six years in the State Penitentiary for possession of a controlled substance, and five years for keeping a place for use or sale of controlled substances. He was also adjudged a habitual offender.

Defendant now claims the trial court found the search warrant invalid for the wrong reason. The State, however, did not appeal that decision, and since the trial court determined the issue in favor of de-

fendant, we consider the matter moot and decline to discuss the probable cause issue. The only meritorious issue on appeal is whether the trial court should have applied the "good faith" exception to the exclusionary rule adopted in *Leon.*

Defendant attacks the "good faith" ruling of the trial court on two grounds. He first points out that, as this court established in *State v. Opperman*, 247 N.W.2d 673 (S.D.1976), the South Dakota Constitution furnishes a supplemental source of individual rights that may afford greater protection than the federal constitution. He then contends that the "good faith" exception should not be applied to Article VI, § 11 of the South Dakota Constitution. Defendant further argues that even if we hold that the exception applies under Article VI, § 11, the trial court's ruling should be overturned because the "good faith" requirement has not been met in this case as to either the state or the federal constitutions.

The exclusionary rule has been embroiled in controversy since it was first adopted in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Much of that controversy has centered on the purposes of the rule.

One school of thought takes the view that the exclusionary rule should be limited to situations where it deters police from conducting illegal searches. Under this view, the rule should not apply where the rule's societal costs outweigh its marginal or nonexistent deterrent value in certain cases. Central to this position is that the admission of illegally seized evidence does not constitute an independent Fourth Amendment violation. This school of thought has prevailed in the more recent Fourth Amendment cases that have witnessed the ascendency of the "police deterrence rationale" for the exclusionary rule and a partial narrowing of the scope of the rule. *See* Dripps, *Living With Leon*, 95 YALE L.J. 906 (1986); Note, *The Good Faith Exception to the Exclusionary Rule*, 27 B.C.L.REV. 609 (1986).

The opposing school takes a broader view, asserting that the purpose of the rule is to restrain the government as a whole. This unitary view adopts the position taken in early cases that each branch of government is a part of a single prosecution network and that no important distinction exists between the procuring of evidence by law enforcement and its admission by the courts. Central to this position is the concept introduced in *Weeks* that the admission of illegally seized evidence is a separate Fourth Amendment violation. *See* Dripps, *supra;* Note, *supra.*

This latter approach continually expanded the exclusionary rule. Since 1974, however, the United States Supreme Court has begun to recognize that such bending application of the exclusionary rule departs from the underlying purpose for which the rule was created. We believe the analysis in *Leon* and its related cases has properly refocused on the purpose behind the exclusionary rule.

The exclusionary rule is not a "necessary corollary of the Fourth Amendment." *Leon*, 468 U.S. at 905, 104 S.Ct. at 3411, 82 L.Ed.2d at 687. The exclusionary rule operates as a judicially created remedy designed to deter illegal police conduct and thereby safeguard Fourth Amendment rights. It was not created as a personal constitutional right of the party aggrieved. *Leon*, 468 U.S. at 906, 104 S.Ct. at 3412, 82 L.Ed.2d at 687; *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561, 571 (1974).

■ Whether a search conducted pursuant to a subsequently invalidated warrant violated a defendant's Fourth Amendment rights is an issue separate from the question whether the remedial exclusionary sanction should apply in a particular case. *Leon*, 468 U.S. at 906, 104 S.Ct. at 3412, 82 L.Ed.2d at 688; *Illinois v. Gates*, 462 U.S. 213, 223, 103 S.Ct. 2317, 2324, 76 L.Ed.2d 527, 538–39 (1983). The latter question involves a balancing of the costs of the exclusionary rule with its deterrent value in various situations. *Leon*, 468 U.S. at 909–10, 104 S.Ct. at 3413, 82 L.Ed.2d at 689–90.

One consequence of the exclusionary rule is that there is an interference with the criminal justice system's truth-finding

function. *Leon,* 468 U.S. at 907–08, 104 S.Ct. at 3412, 82 L.Ed.2d at 688–89. "[A]ny rule of evidence that denies the jury access to clearly probative and reliable evidence must bear a heavy burden of justification, and must be carefully limited to the circumstances in which it will pay its way by deterring official lawlessness." *Id.* at n. 6 (*quoting Gates,* 462 U.S. at 257–58, 103 S.Ct. at 2342, 76 L.Ed.2d at 561 (White, J., concurring in judgment)).

"Our cases have consistently recognized that unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury." An objectionable collateral consequence of this interference with the criminal justice system's truth-finding function is that some guilty defendants may go free or receive reduced sentences as a result of favorable plea bargains. Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system.... Accordingly, "[a]s with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served."

*Leon,* 468 U.S. at 907–08, 104 S.Ct. at 3412–13, 82 L.Ed.2d at 688–89 (citations omitted).

The balancing approach "forcefully suggest[s] that the exclusionary rule be more generally modified to permit the introduction of evidence obtained in a reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment." *Leon,* 468 U.S. at 909, 104 S.Ct. at 3413, 82 L.Ed.2d at 689 (*quoting Gates,* 462 U.S. at 255, 103 S.Ct. at 2341, 76 L.Ed.2d at 559 (White, J., concurring in judgment)). The question whether the exclusionary sanction should apply in a particular case "must be resolved by weighing the costs and benefits of preventing the use in the prosecution's case in chief of inherently trustworthy tangible evidence obtained in reliance on a search warrant issued by a

detached and neutral magistrate that ultimately is found to be defective." *Leon,* 468 U.S. at 906–07, 104 S.Ct. at 3412, 82 L.Ed.2d at 688.

The exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges. *Massachusetts v. Sheppard,* 468 U.S. 981, 990, 104 S.Ct. 3424, 3429, 82 L.Ed. 2d 737, 745 (1984) (*citing Gates,* 462 U.S. at 263, 103 S.Ct. at 2346, 76 L.Ed.2d at 565 (White, J., concurring in judgment)); *Leon,* 468 U.S. at 916, 104 S.Ct. at 3417, 82 L.Ed. 2d at 694. Judges and magistrates are not adversary law enforcement officers but are neutral and detached judicial officers with no stake in the outcome of a criminal prosecution. *Leon,* 468 U.S. at 917, 104 S.Ct. at 3417, 82 L.Ed.2d at 695. If the exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect, the exclusion must alter the behavior of police officers and their departments. If the remedial sanction does not have that effect, it will not meet its stated purpose. *Leon,* 468 U.S. at 918, 104 S.Ct. at 3418, 82 L.Ed.2d at 695.

In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Leon,* 468 U.S. at 921, 104 S.Ct. at 3419, 82 L.Ed.2d at 697 (citations omitted).

The benefits of suppressing evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Leon,* 468 U.S. at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698. In such cases, the exclusionary rule should not apply.

However, this does not mean that exclusion is always inappropriate where an offi-

cer has obtained a warrant and abided by its terms. "[T]he officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." *Id.* The question for the reviewing court is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at n. 23.

The Supreme Court in *Leon* noted four situations in which the good faith exception will not apply. Suppression will be an appropriate remedy "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 698–99. *See also Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The exception will also not apply in cases where the issuing magistrate wholly abandoned his judicial role. *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. *See also Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). "Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699 (*citing Gates,* 462 U.S. at 263–64, 103 S.Ct. at 2345–46, 76 L.Ed.2d at 564–65 (White, J., concurring in the judgment) and *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416, 431 (Powell, J., concurring in part)). "Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699.

The four situations can be easily summarized. "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reck-

less in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon,* 468 U.S. at 926, 104 S.Ct. at 3422, 82 L.Ed.2d at 700–01.

■ Under both the South Dakota and the United States Constitutions, illegally seized evidence generally must be suppressed. The Supreme Court, however, has determined that evidence is admissible when police officers reasonably rely on a warrant that is subsequently invalidated because a judge finds there was an insufficient basis for the issuing magistrate to find probable cause. The *Leon* decision has been extensively critiqued. *See Misner, Limiting Leon: A Mistake of Law Analogy,* 77 J. CRIM. L. & CRIMINOLOGY 507 (1986); Comment, *The Future of the Exclusionary Rule and the Development of State Constitutional Law,* 1987 WIS. L. REV. 377; Dripps, *supra;* Note, *supra.* Nevertheless, the Fourth Amendment question in this case is controlled by *Leon.* Furthermore, we find the *Leon* case persuasive and adopt its reasoning under the South Dakota Constitution Art. VI, § 11 as far as that case has been applied and limited.

In the present case, the officers acted reasonably under both the South Dakota and the United States Constitutions in relying on a warrant issued by a neutral and detached magistrate. The trial court, in denying defendant's motion to suppress, made the following findings of fact:

IX—That the Judge acted in a neutral and detached manner when he issued the search warrant.

\*　　\*　　\*　　\*　　\*　　\*

XVI—That the writers of the affidavits were not reckless in preparing their affidavits nor were they dishonest in the information supplied to the Judge.

XVII—That the officers who searched the Defendant's premises and the writers of the affidavits reasonably believed that the search warrant issued by the judge was valid.

XVIII—That the officers who searched and the writers of the affidavits reason-

ably believed that probable cause existed and that the search would uncover evidence of a crime, namely narcotics.

XVIX—That the search warrant appeared on its face to be proper in all respects and the form of the warrant was technically sufficient.

Based on these findings, we believe the trial court was correct in admitting the evidence under the "good faith" exception to the exclusionary rule. The facts in this case do not fall within any of the four limitations imposed upon the good faith exception by the Supreme Court in *Leon*. Contrary to argument made by the defendant, it cannot be argued that the affidavits so lacked probable cause as to render official belief in the validity of the warrant entirely unreasonable.

Judgment affirmed.

MORGAN and MILLER, JJ., concur.

HENDERSON, J., concurs with a writing.

SABERS, J., dissents.

HENDERSON, Justice (concurring).

In my special writing in *State v. Flittie*, 425 N.W.2d 1, 6 (S.D.1988) (Henderson, J., concurring in part, concurring in result in part), I strove to preserve the integrity of *State v. Opperman*, 247 N.W.2d 673 (S.D. 1976) (*Opperman II*). This Court, in *Opperman II*, extended broader protection against unreasonable search and seizure under our state constitution than the United States Supreme Court did under the Fourth Amendment:

> We are mindful that the United States Supreme Court found that the inventory procedure followed in this case did not amount to an "unreasonable search" in violation of the Fourth Amendment. *South Dakota v. Opperman*, [428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)]. That decision is binding on this court as a matter of federal constitutional law. *Herb v. Pitcairn*, 324 U.S. 117, 65 S.Ct. 459, 89 L.Ed. 789 [(1945)]. "However, manifestly the question remains for us to decide whether it offends any of the provisions of our own consti-

tution and we are under no compulsion to follow the United States Supreme Court in that regard." *House of Seagram v. Assam Drug Co.*, 1970, 85 S.D. 27, 32, 176 N.W.2d 491, 494.

> There can be no doubt that this court has the power to provide an individual with greater protection under the state constitution than does the United States Supreme Court under the federal constitution. *Oregon v. Hass*, 1975, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570.

*Opperman II*, 247 N.W.2d at 674 (footnote omitted).

*Opperman II* and *Flittie*, however, dealt with warrantless automobile searches, a different facet of the law of search and seizure. The present case involves a search undertaken pursuant to a warrant, bringing into play the *Leon/Sheppard* "good faith" exception to the exclusionary rule. The long and convoluted history of the exclusionary rule in South Dakota, attached hereto and by this reference made a part hereof, convinces this writer that we can follow *Leon* without jettisoning *Opperman II*, and, on that basis, I can concur with the majority opinion. While this Court *may* extend broader protection than that of the Fourth Amendment, there is no requirement that it must do so in all contexts. The rationale behind the "good faith" exception, that justice is not served by exclusion of evidence where such exclusion can have no deterrent effect on police lawlessness, is sound.

## HISTORY—EXCLUSIONARY RULE

1909—*State v. Madison*, 23 S.D. 584, 122 N.W. 647 (Common law: Relevant evidence seized pursuant to a search warrant was not to be excluded even if illegally obtained.)

1931—*State v. Gooder*, 57 S.D. 619, 234 N.W. 610 (Federal exclusionary rule adopted, although still a minority position among state courts: "[A]s was said by Justice Holmes: 'We are free to choose between two principles of policy,' and we think that the application of the federal rule is choosing the

lesser of the two evils." 57 S.D. at 626, 234 N.W. at 613.)

1935—1935 South Dakota Session Laws, ch. 96, §§ 1 and 2 (*Gooder* overridden by statute: Section 1 provided that the finding of evidence pursuant to a search warrant was conclusive proof that there was probable cause for the issue of the warrant, while Section 2 provided that defects or insufficiencies in search warrants or underlying affidavits did not justify exclusion of evidence seized.)

1957—*State v. Lane*, 76 S.D. 544, 82 N.W.2d 286 (1935 South Dakota Session Laws, ch. 96, § 1, was held unconstitutional, but § 2 was upheld as merely amending a judicial rule of exclusion.) (Henderson J., special writer in this case, then urging unconstitutionality some 31 years ago as a young attorney.)

1960—SDC 34.1102 enacted (This essentially was a reenactment of 1935 South Dakota Session Laws, ch. 96, § 2.)

1961—*Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (Due process requires a state to exclude unconstitutionally obtained evidence.)

1963—*Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (Constitutionality of state searches is to be judged under the same standards as federal searches under the Fourth Amendment.)

1966—*State v. McCreary*, 82 S.D. 111, 142 N.W.2d 240 (*Mapp* was applied by this Court, striking down SDC 34.1102 as unconstitutional—A search warrant must be valid for evidence seized pursuant to it to be admitted.)

1976—*State v. Opperman*, 247 N.W.2d 673 (S.D.) (This Court, under the state constitution, may provide wider protection against unreasonable search and seizure than the Fourth Amendment— "Inventory search" of an automobile's glove compartment, on *Opperman's* facts, was held unreasonable under the state, not the federal, constitution and evidence thereby seized was excludable.)

1982—*State v. Rice*, 327 N.W.2d 128 (S.D.) (Search of a vehicle's glove compartment during search incident to a legal arrest, as opposed to a later "inventory" search, was held reasonable under the state constitution.)

1984—*United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, and *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737, establishing "good faith" exclusionary rule as part of Fourth Amendment jurisprudence.

1985—*State v. Jackson*, 371 N.W.2d 341, 344-45 (S.D.) (Henderson, J., concurring in result) (*Leon/Sheppard* "good faith" exception first noted as radically changing the law of evidence.) This latter statement of "radically changing the law of evidence" by this special writer, I tendered *after* the *Iverson* case now cited in Justice Sabers' dissent. I full well knew of the enormous impact of *Leon/Sheppard* when I wrote the concurrence in result in *Jackson*.

## FEELING THEIR OATS

Appreciating that newspapers are not legal authority but often express, succinctly, current mood swings in our country, I deign to refer to the Wall Street Journal, front page, Wednesday, June 15, 1988. This article is captioned "Asserting Rights, State Supreme Courts Are Feeling Their Oats About Civil Liberties." Specifically, the State of New Jersey is portrayed as having a Supreme Court which protects, very jealously, individual liberties under the New Jersey State Constitution. And even more specifically, the New Jersey Supreme Court, per the article, veered away from the "good faith" ruling of the United States Supreme Court when Fourth Amendment scrutiny pertains to probable cause and search warrants. Apparently, the New Jersey Court took the position that it need not "experiment with fundamental rights protected by the Fourth Amendment counterpart of our state constitution." The general tenor of the article, both by expressions of state supreme courts and law professors, being that

states are utilizing their state constitutions to expand rights beyond those which the United States Supreme Court finds to be protected under the federal constitution. All in all, the article in the Wall Street Journal wins credence to Justice Sabers' viewpoints of protecting citizens' rights under our state constitution to a greater extent than that which is now being done by the United States Supreme Court under the federal constitution.

This particular informant, instanter, seemed to have very specific information concerning Saiz. I note that the circuit judge, who issued the search warrant, questioned the affiants. It was certainly not a willy-nilly approach to the issuance of a search warrant. I further note that another circuit judge, who tried this case, denied the motion to suppress, employing the "totality of the circumstances" test which was resurrected by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Under *State v. O'Connor*, 378 N.W.2d 248 (S.D.1985), it appears that this Court approved the "totality of the circumstances" test which is applicable to probable cause challenges founded under art. VI, § 11, of the S.D. Constitution. It would appear to me that the *Aguilar* and *Spinelli* two-pronged probable cause test is old hat in South Dakota by virtue of the opinion in *O'Connor*, written by Circuit Judge Marshall Young, who was substituting for a disqualified Justice. I am truly convinced, therefore, that the exclusionary rule should not be imposed in this case for the reason that these law enforcement officers acted objectively, in good faith, and there were no transgressions on their part. Many writers and students of the law seem to have lost sight of the fact that the exclusionary rule was never intended to become a personal constitutional right but, rather, was implemented to guard Fourth Amendment rights. Surely, the exclusionary rule was designed to prevent and deter police misconduct rather than to punish any error of a judge or magistrate. *Massachusetts v. Sheppard*, 468 U.S. at 990, 104 S.Ct. at 3429, 82 L.Ed.2d at 745. There is simply no police misconduct whatsoever in this

case and there was careful consideration of the presentation of the affidavits by Circuit Judge Tschetter, who also saw fit to personally question the affiants. Under all of the circumstances, I can comfortably join the majority opinion without benefit of taking a soft approach to the rights created by our own state constitution.

SABERS, Justice (dissenting).

The majority holds that the "good faith" exception in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) should be adopted under our South Dakota Constitution. The majority claims to adopt the reasoning and limits of the *Leon* decision. In fact, the majority has created a lesser standard of protection under the South Dakota Constitution than *Leon* creates under the United States Constitution. This clearly is impermissible under the United States Constitution. *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

While I have some concerns with the adoption of the *Leon* "good faith" exception under the South Dakota Constitution, I am more concerned with the majority's application of the exception in this case. The majority opinion is repugnant not only to the South Dakota Constitution, but the federal constitution and the *Leon* decision. Under the "good faith" exception, *Leon* requires that deference be given to a magistrate's decision to issue a warrant in doubtful cases where reasonable minds could differ. However, *Leon* makes it clear that this deference is not boundless and the "good faith" exception will not apply in several instances. One instance, relevant to this case, is where a police officer's affidavit is so "facially deficient" that it cannot give rise to probable cause.

The affidavits in this case fit within this exception as being so defective that it could not "provide the magistrate with a substantial basis for determining the existence of probable cause[.]" *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 2332, 76 L.Ed. 2d 527, 549 (1983). The affidavits of the sheriff and states attorney, in support of the warrant, are nearly identical to the

defective affidavit presented in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964). In *Aguilar*, the affidavit recited in part:

"Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law."

*Id.*, 378 U.S. at 109, 84 S.Ct. at 1511.

The *Aguilar* court concluded that the affiant must present facts upon which the magistrate can make a determination of probable cause. The Court stated that "mere affirmance of belief or suspicion is not enough." *Id.*, 378 U.S. at 112, 84 S.Ct. at 1512 (*citing Nathanson v. United States*, 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159, 161 (1933)). The Court noted that this danger is particularly likely where the affiant presents a *mere conclusion from an unidentified informant* and the affiant has no *personal knowledge of the information*.

This court has favorably cited *Aguilar* for the proposition that warrants must be issued on more than mere conclusory affidavits:

[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was "credible" or his information "reliable". Otherwise, "the inferences from the facts which lead to the complaint" will be drawn not "by a neutral and detached magistrate," as the Constitution requires, but instead, by a police officer "engaged in the often competitive enterprise of ferreting out crime," or, as in this case, by an unidentified informant. (Citations omitted).

*State v. Iverson*, 364 N.W.2d 518, 521 (S.D. 1985), *quoting Aguilar*, 378 U.S. at 114, 84 S.Ct. at 1514.

In setting forth the "good faith" exception the *Leon* Court reaffirmed *Aguilar*. The *Leon* Court was careful to state that the decision neither affected the probable cause standard, nor any other Fourth Amendment protection. The Court noted that the "good faith" exception applies only in close cases where an officer could have a *reasonable* good-faith basis that the warrant issued by the magistrate was based upon probable cause. Citing *Aguilar*, the *Leon* Court stated:

"Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the *bare conclusions* of others." (emphasis added).

*Leon*, 468 U.S. at 915, 104 S.Ct. at 3416. In such situations, the *Leon* Court held that the "good faith" exception was inapplicable.

Like *Aguilar*, the affidavit here did not present any of the underlying circumstances from which the informant concluded the drugs were where he claimed. There was clearly insufficient factual information upon which the magistrate could find that probable cause existed. The trial court so held. Both the majority and the State seem to rely on the fact that the sheriff and states attorney believed there was probable cause to issue a warrant. This subjective belief is irrelevant to whether there was a good-faith belief on the part of the officers. The decision in *Leon* makes it clear that good faith must be based on an objective standard. Under *Leon*, and the long line of authority preceding *Leon*, there could not be a reasonable belief that the affidavit established probable cause to issue a warrant. Therefore, these facts are insufficient for the application of the *Leon* "good faith" exception.

I would hold the trial court's finding that the law enforcement officials acted in good faith under *Leon* to be clearly erroneous. Therefore, I respectfully dissent.