2000 SD 115

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Fernando M. BELMONTES, Defendant and Appellant.**

**No. 21115.**

Supreme Court of South Dakota.

Considered on Briefs March 20, 2000.

Decided Aug. 23, 2000.

Mark Barnett, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Bruce A. Hubbard of Hansen, Hubbard & Swanson, Sturgis, South Dakota, Attorney for defendant and appellant.

AMUNDSON, Justice.

[¶ 1.] Fernando Belmontes (Belmontes) appeals the denial of a motion to suppress evidence seized pursuant to search warrant. We reverse and remand.

## FACTS

[¶ 2.] On March 31, 1999, Gary Cudmore (Cudmore), a deputy sheriff in Ziebach County, received a telephone call from an informant. Informant told Cudmore that he was informed by another person that Derwin Martinez had left Modesto, California, in a white passenger car with California license plates. Martinez and two other individuals were reportedly traveling to Red Scaffold, South Dakota with approximately five pounds of marijuana. In-

formant advised Cudmore that Martinez would be arriving in Red Scaffold within a couple days. Cudmore believed that this information was reliable because Informant had given information on four or five previous occasions and the tips had resulted in arrests for various violations.

[¶ 3.] Cudmore passed the information received from informant to Ziebach County Sheriff Robert Menzel (Menzel) and Trooper Shane Severyn (Severyn). Cudmore, however, would not release the name of the informant who supplied the information or the name of the individual who supplied the information to his informant. Severyn passed the information from Cudmore onto Agent Pat West (West) of the South Dakota Division of Criminal Investigation.

[¶ 4.] West subsequently prepared an Affidavit in Support of Request for Search Warrant. West's affidavit identified that he had received the information from the Ziebach Sheriff's Department. In addition, statements were included from Menzel that he had seized drug paraphernalia in the past from Martinez, that Martinez had been previously arrested for assault, and that Martinez owned a silver Buick Skylark automobile. West did not include, however, any information that the informant was reliable or his information was reliable. Further, the affidavit did not state that the information was supplied from an unnamed informant who had received the information from another unnamed informant.

[¶ 5.] Based upon the affidavit, the Magistrate issued a search warrant on April 1, 1999, to allow law enforcement to search the white Mercury Cougar that was identified in the warrant. The warrant, which is referred to as an anticipatory search warrant[1], limited the search to an area within fifty miles of Red Scaffold and required the warrant be served within seventy-two hours after signing.

[¶ 6.] On April 4, 1999, informant advised authorities that Martinez and two other men had arrived in South Dakota during the night, the white Mercury Cougar had broken down south of Red Scaffold and the three individuals had left the car and were in a different automobile driven by Martinez's mother, Carmen Collins (Collins). Severyn relayed this information to West. Severyn later stopped Collins' vehicle and ticketed Collins for having a dangling object in her vehicle and having no license in her possession. The three men in the car, Martinez, Miguel Valenzuela and Belmontes, were removed from the vehicle, pat-searched and detained. After being given their Miranda warnings, Valenzuela and Belmontes were taken to Faith, South Dakota Police Department. Martinez, however, was taken by West back to the white Mercury Cougar to execute the search warrant on the automobile. A search discovered numerous items including: a digital scale, packages of ZigZag papers used in rolling cigarettes and a one pound block of marijuana wrapped in plastic, baking soda, duct tape, and grease. Belmontes, Martinez and Valenzuela were arrested for possession of marijuana.

[¶ 7.] At trial, Belmontes moved to suppress the items discovered in the search. The trial court found that the affidavit requesting the search warrant did not contain sufficient probable cause because it lacked any evidence that efforts were made to collaborate the confidential informant's statements to ensure their credibility.[2] The trial court held that the law

---

1. An "anticipatory search warrant" has been defined as "a warrant that has been issued before the necessary events have occurred which will allow the constitutional search of the premises; if those events do not transpire, the warrant is void." *United States v. Garcia*, 882 F.2d 699, 702 (2dCir.1989). This Court first encountered and accepted the use of anticipatory search warrants in *State v. Engel*, 465 N.W.2d 787 (S.D.1991).

2. State has not appealed this trial court finding by filing a notice of review. In his dissent, Justice Gilbertson accuses the Court of setting a "new standard" that "a law officer ... possess a more sophisticated understand-

enforcement officers acted in good faith and should not be punished by the mistake of the Magistrate in issuing the warrant. Therefore, suppression of the fruit of this search was denied.

[¶ 8.] The jury convicted Belmontes of possession of marijuana. Belmontes appeals, raising the following issue:

> Whether the circuit court erred in applying the good faith exception to a facially insufficient affidavit for search warrant.

## STANDARD OF REVIEW

[¶ 9.] We have often stated that our standard of review for a trial court's grant or denial of a motion to suppress is abuse of discretion. *State v. Vento,* 1999 SD 158, ¶ 5, 604 N.W.2d 468, 469 (citing *State v. Anderson,* 1996 SD 59, ¶ 8, 548 N.W.2d 40, 42 (citations omitted)). An abuse of discretion is discretion " 'exercised to an end or purpose not justified by, and clearly against reason and evidence.' " *State v. Durke,* 1999 SD 39, ¶ 11, 593 N.W.2d 407, 409 (quoting *State v. Gesinger,* 1997 SD 6, ¶ 8, 559 N.W.2d 549, 550 (citations omitted)). Further, it is well settled that,

> A trial court's findings of fact from a suppression hearing must be upheld unless they are clearly erroneous. *State v. Pfaff,* 456 N.W.2d 558 (S.D.1990).... This [C]ourt's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made. *State v. Corder,* 460 N.W.2d 733 (S.D.1990). In making this determination, we review the

evidence in a light most favorable to the trial court's decision. *Id.*

*Id.* (quoting *State v. Baysinger,* 470 N.W.2d 840, 843 (S.D.1991)).

## DECISION

[¶ 10.] **Whether the circuit court erred in applying the good faith exception to a facially insufficient affidavit for search warrant.**

[¶ 11.] It is well-settled that "[i]f there is insufficient probable cause, the evidence seized in violation of the suspect's rights under the Fourth and Fourteenth Amendments must be suppressed." *State v. Gerber,* 90 S.D. 432, 436, 241 N.W.2d 720, 722–23 (1976) (citing *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court created a "good faith" exception to the Fourth Amendment exclusionary rule. Under the "good faith" exception, "evidence is admissible when police officers reasonably rely on a warrant that is subsequently invalidated because a judge finds there was insufficient basis for the issuing magistrate to find probable cause." *State v. Saiz,* 427 N.W.2d 825, 828 (S.D.1988). In *Leon,* the Supreme Court noted that "good faith" exception will not apply in the following four examples:

> Suppression ... remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The exception ... will also not apply in cases where the issuing

ing of this area of the law than is required by a judge." Simply put, this is not the case. The Court is merely stating that an officer cannot withhold known vital information necessary to support a valid search warrant and then benefit from such conduct under the "good faith" exception. There is no "new standard," rather the Court is simply agreeing with the trial court that the police officer prepared and filed a deficient affidavit. This decision merely says that the "good faith" exception is not intended as a mechanism to cover up deficient police work as found by the trial court in this case.

magistrate wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); in such circumstances, no reasonably well trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, [422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416, 431] (Powell, J., concurring in part); *see* [*Illinois v. Gates*, 462 U.S. 213, 263–64, 103 S.Ct. 2317, 2345–46, 76 L.Ed.2d 527, 564–65 (1983) ] (White, J., concurring in the judgment). Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Leon*, 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699.

[¶ 12.] In the present case, the trial court concluded that "the affidavit in support of the search warrant contained insufficient probable cause in that it failed to show any efforts to corroborate the confidential informant's statements, nor any basis for the officer's belief in the informant's reliability." The court found that West had failed to meet the exception under *Gerber*, 90 S.D. 432, 241 N.W.2d 720, by "not corroborating the Informant's information by personal observation, reputation of the Defendants, or other research." Further, the court found that while the affidavit contained insufficient facts to support the issuance of a search warrant, the officers acted in good faith, as defined in *Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 and *Saiz*, 427 N.W.2d 825, by relying on the search warrant issued by Magistrate.

[¶ 13.] It is well-settled that the purpose of the exclusionary rule was "to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916, 104 S.Ct. at 3417, 82 L.Ed.2d at 694. In *Leon*, the error was made by a judicial officer. In the present case, however, the failure to supply information regarding the informants was the error of the officer requesting the warrant. Whether the "good faith" exception applies when the error is made by the affiant officer, rather than the issuing judge, is a question of first impression for this Court.

[¶ 14.] The United States Supreme Court noted in *Leon* that,

"If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment."

468 U.S. at 919, 104 S.Ct. at 3419, 82 L.Ed.2d at 696 (quoting *United States v. Peltier*, 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374, 384 (1975)). Whether the police "officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues" was in good faith is determined under the objectively reasonable standard. *Id.*, 468 U.S. at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698. An officer cannot "manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.*, 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699 (quoting *Brown*, 422 U.S. at 610–11, 95 S.Ct. at 2265–66, 45 L.Ed.2d at 431–32 (Powell, J., concurring in part)). This good faith inquiry is limited to the "objectively ascertainable question of whether a reasonable well trained officer would have known that the search was illegal despite the magistrate's authorization." *State v. Klosterman*, 114 Ohio

App.3d 327, 683 N.E.2d 100, 103 (1996) (citing *Leon,* 468 U.S. at 922 fn. 23, 104 S.Ct. at 3420 fn. 23, 82 L.Ed.2d at 698 fn. 23).

[¶ 15.] In *Leon,* the court further noted that "[n]othing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." 468 U.S. at 923 fn.24, 104 S.Ct. at 3420 fn. 24, 82 L.Ed.2d at 698 fn. 24. The Fourth Circuit Court of Appeals emphasized this footnote from *Leon* in *United States v. Wilhelm,* 80 F.3d 116, 121 (4thCir.1996) when it held that the "good-faith exception to the exclusionary rule should not apply in this case due to the 'bare bones' nature of the affidavit[.]"[3]

[¶ 16.] In *Klosterman,* the Ohio Court of Appeals reviewed whether the affiant police officer's conduct fell within the good faith exception under *Leon.* 683 N.E.2d at 103. Deputy Sheriff Larry Fletcher had failed to provide a sufficient basis to support the issuance of a search warrant. In holding that the good faith exception did not apply, the court noted,

> [t]he officer cannot claim good faith reliance on a search warrant based on less than probable cause where he has failed to place in the affidavit information known to him that would support probable cause. The officer's reliance on the warrant can be objectively reasonable only if his belief that the affidavit contains facts sufficient to create probable cause is itself objectively reasonable.

*Id.* at 104. Further, the "[c]ourt objectively evaluating an officer's claim of good faith reliance must charge the officer with a certain minimum level of knowledge of the law's requirements." *Id.* (citing *State v. Rees,* 1989 WL 145614 (Ohio Ct.App. 1989)). Finally, in holding that the evidence obtained under the search warrant was not admissible, the court held that "a reasonably well trained officer would have known that the information contained in this affidavit did not establish probable cause and could not have formed an objectively reasonable belief that it did." *Id.* at 105.

[¶ 17.] In *People v. Maestas,* 204 Cal. App.3d 1208, 252 Cal.Rptr. 739 (1988), the court was faced with whether officers acted in objective, good faith reliance on a warrant when the affidavit in support of the warrant did not establish probable cause. The court noted that "an officer who does not merely execute but prepares and submits a warrant application containing misstatements and omissions cannot rely on the acceptance of that application as evidence that his conduct was objectively reasonable." *Id.* at 743. Further, the court opined that the question was not whether Officer Silva was a well trained and experienced officer, but rather, whether "a reasonably well-trained officer in his position would have known that his affidavit failed to establish probable cause." *Id.* at 744.

[¶ 18.] In *United States v. Barrington,* 806 F.2d 529, 532 (5thCir.1986), the court addressed facts analogous to the facts in this case; an officer's obtaining of "a warrant based on his own bare bones affidavit and then conduct[ing] the search himself." In rejecting the application of the *Leon* good faith exception, the court held:

> In footnote 24 [of *Leon* ], the Court indicates that an officer may not obtain a

---

**3.** A "bare bones" affidavit has been described as an affidavit which is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[.]' " *See United States v. Patty,* 96 F.Supp.2d 703, 710 (E.D.Mich.2000). *See also State v. Thieling,* 2000 ND 106, 611 N.W.2d 861, 864–65 (2000) *(quotation omitted) (stating that* " '[s]ufficient information, rather than "bare bones" information must be presented to the magistrate;' '[a]n affidavit expressed in conclusions without detailing underlying information is insufficient for probable cause.' "). Although the trial court did not specifically hold this to be a "bare bones" affidavit, it did find that the information was insufficient to establish probable cause and is in essence, a finding that this was a "bare bones" affidavit.

warrant based on a bare bones affidavit "and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct a search." [citation omitted.] In the instant case, Captain Solomon obtained a warrant based on his own bare bones affidavit and then conducted the search himself. If one cannot use a bare bones affidavit and then rely on an ignorant colleague to conduct the search, he cannot himself conduct the search based on his own bare bones affidavit. Solomon's behavior does not fall within the ambit of the good faith exception of *Leon*, for he had no good faith reason to believe the magistrate had made a probable cause determination.

*Id.*

■ [¶ 19.] In the present case, West, as the affiant, was aware that the information was received from an informant. West detailed in his affidavit in support of the search warrant that he had extensive training and education as a law enforcement officer. West also testified at the motions hearing that he had training in preparing search warrants and he was familiar with what needed to be done to obtain a search warrant. West further testified that he had never worked with this confidential informant before, nor did he have knowledge that the informant had provided information on a prior occasion. The only information West had received on the informant's credibility was from Menzel who had stated "he was familiar with the subject and believed that the information that he'd get from him is going to be accurate." Further, West did not mention the informant's credibility or reliability in the application for the search warrant.[4]

[¶ 20.] The trial court found that the affidavit submitted by West was insufficient, but the good faith exception applied to render the search valid. We disagree with the trial court's application of the good faith exception. To allow the good faith exception to apply in this case would be improper and send the wrong message. In other words, an officer could submit an inadequate affidavit to a magistrate, which the officer knows is inadequate, and then willy-nilly go out and conduct the search because he has a "good faith" shield against any subsequent challenge. Since there is no error shown on the part of the magistrate, the good faith exception found by the trial court would benefit the party whose conduct caused the error. We can not agree with this decision.

[¶ 21.] We reverse and remand.

[¶ 22.] SABERS, Justice, concurs.

[¶ 23.] KONENKAMP, Justice, concurs in result.

[¶ 24.] MILLER, Chief Justice, and GILBERTSON, Justice, dissent.

KONENKAMP, Justice (concurring in result).

[¶ 25.] If we validate this search, then we may as well declare that there are no Fourth Amendment defects the good faith doctrine cannot eclipse. In *State v. Saiz*, 427 N.W.2d 825 (S.D.1988), we embraced this doctrine, but we also adopted its four exceptions, one of which applies here: an officer would not "manifest objective good

---

4. In *Leon*, the United States Supreme Court noted that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." 468 U.S. at 916, 104 S.Ct. at 3417, 82 L.Ed.2d at 694. We reiterated this principle from *Leon* in *Saiz* where we recognized that " '[p]enalizing the officer for the magistrate's error, *rather than his own,* cannot logically contribute to the deterrence of Fourth Amendment violations.' " *Saiz*, 427 N.W.2d at 827 (quoting *Leon*, 468 U.S. at 921, 104 S.Ct. at 3419, 82 L.Ed.2d at 697) (emphasis added). It is important to emphasize that unlike *Saiz*, where we upheld the good-faith exception to a situation involving police officer reliance upon the magistrate's error, we are presently faced with *the officer's error.* This error in preparation of the request for the search warrant logically falls under the purpose of the exclusionary rule; to deter police misconduct in preparing requests for search warrants. *See Leon*, 468 U.S. at 916, 921, 104 S.Ct. at 3417, 3419, 82 L.Ed.2d at 694, 697.

faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* at 828 (citing *Illinois v. Gates,* 462 U.S. at 263–64, 103 S.Ct. at 2345–46, 76 L.Ed.2d at 564–65 (White, J., concurring in the judgment) and *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416, 431 (Powell, J., concurring in part)); *United States v. Leon, supra,* 468 U.S. at 923, 104 S.Ct. at 3420, 82 L.Ed.2d at 699.

[¶ 26.] To decide whether the good faith doctrine will save this invalid search warrant, the question here is whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. *Saiz,* (citing *United States v. Leon,* 468 U.S. 897, 922–923, fn. 23, 104 S.Ct. 3405, 3420, fn. 23, 82 L.Ed.2d 677 (1984)). In assessing objective good faith, we consider the totality of the circumstances using a standard centering on a reasonably well-trained officer. Contrary to the suggestion in the writings of both the majority and the dissent that we review for abuse of discretion, the question of objective good faith is ultimately a legal one reviewable de novo. *United States v. Accardo,* 749 F.2d 1477, 1481 (11th Cir.1985). Counsel here did not address the proper standard of review. But as we are the guardians of our judicial process, we cannot leave the method by which we review a case to the vagaries of appellate advocacy. Otherwise, the standard of review might conceivably change in every appeal.

[¶ 27.] In drawing the limits of the good faith doctrine, it is vital that we set clear boundaries. Although it has similarities to *Saiz,* this case crosses the line. Like *Saiz,* the affidavit here gave nothing on the underlying circumstances for the informant data. Yet, in concluding that there was objective good faith in *Saiz* we observed that the affidavit contained language that the informant was "reliable" and had been " 'trustworthy and accurate' in the past." Here, in contrast, there was no language on the reliability or credibility of the informant.

[¶ 28.] At the suppression hearing in this case it was established that the Deputy Sheriff who received the information from the informant, as well as the Sheriff and Trooper who passed it on, all believed the information was reliable, accurate, and "very credible." However, this "credible" unnamed informant was not the real informant. The affidavit is somewhat misleading on this point, though perhaps unintentionally so. It states that "[t]he information was received from a reporting party who wished to remain anonymous." It was not disclosed in the affidavit that the "reporting party" was not the one who professed to have firsthand knowledge of the drug transaction. The true informant did not speak to anyone at the Ziebach County Sheriff's Department or any other law enforcement officer. As that fact was not mentioned in the affidavit, the magistrate could not have known when he approved the warrant that the anonymous report was from the informant's informant.

[¶ 29.] Was it objectively reasonable for these law enforcement officers to believe probable cause existed knowing they had no information whatsoever on the reliability and credibility of the true informant, and that their unnamed "reporting party" had no firsthand information, but received whatever he or she had from yet another unknown person? Clearly, the answer must be no. *See Leon,* 468 U.S. 897, 922, n. 23, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 ("good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."). If an officer's warrant request lies outside the range of reasonable proficiency expected of an officer, then that officer cannot rely on the magistrate's decision to issue the warrant. *Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986).

[¶ 30.] Reasonably well-trained law enforcement officers know that corroboration of anonymous information is required because of its intrinsic unreliability. Under the *Leon–Saiz* standard, officers must "have a reasonable knowledge of what the law prohibits." *Leon,* 468 U.S. at 919, n. 20, 104 S.Ct. at 3418, n. 20. To uphold this search under the mantle of good faith would make the process of supporting a search warrant request with probable cause almost meaningless. "Every citizen is entitled to be secure from the possibility that angry neighbors, misguided practical jokers, ex-spouses, heartbroken ex-lovers or other personal enemies will provide anonymous information leading to police intrusion into their homes and personal effects." *People v. Rivera,* 190 Cal.App.3d 1591, 236 Cal.Rptr. 116, 122 (1987). *Saiz* establishes a minimum threshold for sanctioning an inadequate affidavit under the good faith doctrine. Justifying a search on an uncorroborated anonymous tip given by an unnamed informant who received his or her information from yet another unnamed informant simply goes beyond objective reasonableness.

[¶ 31.] At the very least, in the absence of a showing on the reliability of a confidential informant, corroboration requires some independent verification of illegal or suspicious activity. Copious details about a person's clothing, habits, residence, travel itinerary, and companions explain nothing if they all add up to no implication of illegal or suspicious behavior. *Rivera,* 236 Cal.Rptr. at 120. Of course, an affidavit detailing lawful activities does not make it an improper "bare bones" affidavit. Combinations of lawful and suspicious circumstances may lead to a justifiable inference of criminal activity. *See, e.g., Gates,* 462 U.S. at 243, n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 ("[I]nnocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands."); *United States v.*

*Muniz–Melchor,* 894 F.2d 1430, 1438 (5th Cir.1990) ("A succession of otherwise 'innocent' circumstances or events . . . may constitute probable cause when viewed as a whole."). But here, other than describing the travel itinerary, the person's car involved, and similar details, no corroboration of any suspicious activity was obtained. When viewing the totality of circumstances in this case we have only an anonymous tip that illegal substances were being transported without any independent verification of illegal activity.

[¶ 32.] Other courts have reached the same conclusion. In *State v. Hlavacek,* 185 W.Va. 371, 407 S.E.2d 375 (1991) the court stated: "Generally, when information received from a confidential informant is relied upon in an affidavit for a search warrant, the affidavit must contain information which establishes the informant's basis of knowledge and lends credibility to the informant's statements." *Id.* at 382. "Because the affidavit [the officer] presented to the magistrate in this case made no reference to the reliability of the informant or how he had come to possess his information, we conclude that the affidavit was 'bare bones' and insufficient to support the issuance of a warrant to search the appellant's car." *Id.* at 382–83. The court ruled that the illegal search could not be "redeemed through resort to [the good faith] exception," (quoting *State v. Adkins,* 176 W.Va. 613, 346 S.E.2d 762, 775 (1986)), where "the affidavit in question is so conclusory with regard to its probable cause information as to render it a 'bare bones' affidavit" because "[e]ven under *Leon,* a bare bones affidavit is not subject to rehabilitation by the good faith exception." *See also United States v. Jackson,* 818 F.2d 345, 350, n. 8 (5th Cir.1987) (affidavit totally lacking in indicia of reliability and basis of knowledge constitutes bare bones affidavit, thus good faith exception to the exclusionary rule not available); *State v. Swearingen,* 131 Ohio App.3d 124, 721 N.E.2d 1097, 1103 (1999) (reasonably well-trained officer would not have relied

on warrant because affidavit and oral testimony were so lacking in indicia of probable cause it rendered official belief in its existence entirely unreasonable).

[¶ 33.] The officers here may have been acting with subjective good faith, but their actions were not objectively reasonable under the *Saiz* criteria.

GILBERTSON, Justice (dissenting).

[¶ 34.] I would affirm the trial court's denial of the motion to suppress evidence seized pursuant to the search warrant in this case based upon the good faith exception to the exclusionary rule. Initially, I agree with the Court's determination that the affidavit in support of the search warrant in this case was deficient because it failed to show a basis for West's belief in the informant's reliability or corroboration of the informant's information by personal observation or other research. The key language in the affidavit referring to the informant simply states: "[t]he information was received from a reporting party who wished to remain anonymous." While after the United States Supreme Court's decision in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the rigid, two-pronged, basis of knowledge/reliability test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for determining probable cause is no longer the law, some facts bearing on the informant's reliability and basis of knowledge must be provided to the magistrate issuing the warrant. *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543.

[¶ 35.] No information was provided as to whether the confidential informant was a citizen informer, or a paid or voluntary informant working with law enforcement. Nor did the affidavit state whether the

informant had supplied law enforcement with information concerning illegal activity in the past. Finally, the magistrate was not aware that the confidential informant had obtained his information about Martinez through another individual, who also wished to remain anonymous. Thus, without this background, the magistrate could not possibly have known how the informant obtained his information or determined the credibility of the information. *People v. Kershaw*, 147 Cal.App.3d 750, 195 Cal.Rptr. 311, 315 (1983) (citing *People v. Reagan*, 128 Cal.App.3d 92, 180 Cal. Rptr. 85 (1982)). I therefore agree with the Court's conclusion that there was an absence of probable cause to support the issuance of the search warrant in question.[5]

[¶ 36.] Despite these deficiencies, however, the officers in this case acted "in objective good faith" in relying upon the search warrant signed by the magistrate. *United States v. Leon*, 468 U.S. 897, 908, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677, 689 (1984). The appropriate test of an officer's good faith is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Allen*, 211 F.3d 970, 977 (6th Cir.2000) (Gilman, J., concurring) (quoting *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23, 82 L.Ed.2d at 698 n. 23). I cannot conclude that the affidavit at issue was "so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable.*" *Id.* (citing *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699) (emphasis added). *See also United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir.1985) (stating "[c]ourts cannot make the good faith of an officer turn upon whether his reliance on a warrant was misplaced. It is only when the reliance was wholly unwarranted that good faith is absent.").

---

**5.** Although the State spends a substantial portion of its brief arguing that probable cause did exist, in *State v. Saiz*, 427 N.W.2d 825, 826 (S.D.1988) the failure of the State to file a notice of review on the issue of probable

cause, which it lost at the trial court level, rendered the issue moot on appeal to this Court. As the State did not file a notice of review on the issue of probable cause in this case, *Saiz* controls on that issue.

[¶ 37.] While the affidavit fails to meet the probable cause test, it hardly sinks to the level of a "a bare-bones" affidavit. Rather, like the affidavit in *State v. Saiz*, 427 N.W.2d 825 (S.D.1988), it was invalidated because of inadequate information provided about the background of the informant. In *Saiz* we upheld the validity of the search under the good-faith *Leon* standard despite the invalidity of the warrant.[6]

[¶ 38.] Herein the facts detailed in the affidavit were very particular in describing what vehicle Martinez was thought to be driving, who he was travelling with, where the individuals were travelling from, when they would be arriving at their destination, and what illegal substance was being transported by them. The affidavit stated that the confidential informant had informed Deputy Sheriff Cudmore that Martinez was driving a white Mercury Cougar

---

**6.** The trial court, which refused to suppress the search in this case, was also the trial court in *Saiz*. A review of the findings of fact and conclusions of law herein shows that the trial court determined it to be the same type of case and even cited to *Saiz* for authority upon which to base its decision. Today the Court in ruling contrary to *Saiz* fails to overrule it or even to adequately distinguish it from the facts of this case. In both the present case and *Saiz*, the invalidity was based on the lack of probable cause contained in the warrant affidavit. "The Supreme Court, however, has determined that evidence is admissible when police officers reasonably rely on a warrant that is subsequently invalidated because a judge finds there was an insufficient basis for the issuing magistrate to find probable cause." *Saiz*, 427 N.W.2d at 828. In both cases the "error" of the issuing magistrate was a reliance upon an affidavit that was subsequently found by the trial court to lack probable cause. Moreover, in *Leon*, the police "misconduct" was again the same, an affidavit lacking in probable cause. 468 U.S. at 903 n. 2, 104 S.Ct. at 3410 n. 2, 82 L.Ed.2d at 685 n. 2. This police "error" of an insufficient affidavit ultimately becomes the responsibility of the neutral magistrate:

> In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Id.* at 920–21, 104 S.Ct. at 3419, 82 L.Ed.2d at 697 (citations omitted). Nevertheless, in

both *Leon* and *Saiz* the validity of the search was upheld based on the good-faith standard despite the underlying inadequate warrant affidavit.

The rationale of the plurality is even more questionable given the standard of review of this Court is "abuse of discretion." The plurality merely concludes that "[w]e disagree with the trial court's application of the good faith exception." However, to rise to the level of an abuse of discretion, which is the applicable standard of review, the question is "not whether we would make a similar ruling, but rather whether a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion." *State v. Barber*, 1996 SD 96 ¶ 14, 552 N.W.2d 817, 820. Without so acknowledging, the plurality today is simply adopting the rationale of the dissent in *Saiz* without stating how this Court erred in that case or how the trial court in the case before us abused its discretion.

The concurrence in result overrules the determination of the trial court based on a de novo standard of review. While other jurisdictions may apply this standard, we have adhered to an abuse of discretion standard of review. *State v. Vento*, 1999 SD 158 ¶ 5, 604 N.W.2d 468, 469 (citing *State v. Anderson*, 1996 SD 59 ¶ 8, 548 N.W.2d 40, 42 (citing *State v. Ramirez*, 535 N.W.2d 847, 848 (S.D.1995); *State v. Smith*, 477 N.W.2d 27, 31 (S.D.1991); *State v. Zachodni*, 466 N.W.2d 624, 630 (S.D.1991). Moreover, Belmontes does not raise the standard of review as an issue to this Court in his brief. We have repeatedly said that we will not gratuitously decide issues not raised on appeal to this Court. If we are to abandon the abuse of discretion standard of review in favor of a de novo standard, it should be raised at the trial court with an appropriate record developed and then appealed and briefed to this Court. As a matter of fundamental fairness, all parties should be appraised that this is a contested issue and be allowed to argue the merits of such a substantial change in our jurisprudence before it occurs.

with California license plates. It also provided the exact time Martinez had left California—11:00 a.m. on April 1, 1999, and that he was travelling to Red Scaffold, South Dakota. The affidavit also provided that Martinez was travelling with two Mexican males and that he was transporting a large quantity of marijuana. Finally, the affidavit included information that Martinez's movements were going to be tracked, as according to the informant Martinez was expected to obtain a motel room at the Branding Iron Motel in Faith, South Dakota, or the Super 8 Motel in Eagle Butte, South Dakota. This is at least as much or even more detail than the facts provided to the magistrate in *Saiz*. The officers in this case acted in good faith in relying upon the anticipatory search warrant issued by the magistrate in conducting the search of the white Mercury Cougar.

[¶ 39.] Testimony at the suppression hearing indicated that the law enforcement officers involved in this case were familiar with the confidential informant providing the information about Martinez. While such evidence is not admissible to salvage the deficient warrant affidavit (*State v. Smith*, 281 N.W.2d 430, 433 (S.D.1979)), it shows that the officers were not attempting to mislead the issuing magistrate or withhold information which would lead an objectively reasonable officer to conclude the warrant was improperly obtained. *Saiz*, 427 N.W.2d at 828. Cudmore and other officers had used the confidential informant that provided the information from the other anonymous citizen informant between four or five times. Cudmore testified that the informant had never been paid in any

way for the information he offered to law enforcement.

[¶ 40.] Cudmore also testified that based upon his own knowledge, the informant was able to provide sufficient and credible information concerning Martinez, and that Sheriff Menzel and Trooper Severyn also believed the information was "very credible." Cudmore testified that on "four or five different occasions" he was able to make arrests based upon tips that had been given by the confidential informant utilized in this case. In addition, Cudmore testified that the confidential informant had indicated to him that the information was provided by a "reliable" third party, and that the third party had knowledge that Martinez had possibly "brought back different loads of marijuana in the past."

[¶ 41.] Agent West spoke with Sheriff Menzel and was advised that Menzel was "familiar with the informant." West testified that: "I believe he informed me that the information he was receiving from the informant was going to be credible." Finally, Menzel informed West that he had confiscated drug paraphernalia from Martinez in the past.

[¶ 42.] In an absence of the informant's ability to provide precise details concerning Martinez, Belmontes and Valenzuela and track their whereabouts from California to South Dakota, the exclusionary rule might apply. However, under the facts of this case, it appears to me that the officers possessed a sufficient amount of details to reasonably believe in good faith that the informant's information included in the affidavit was true and accurate. In addition, some of the officers had previously worked with the confidential citizen informant involved in this case.[7]

7. Although not determinative because the events occurred after the issuance of the warrant, the events that unfolded between the time of the issuance and the warrant's execution would not have caused an objectively reasonable officer to question the accuracy of the information contained in the affidavit. The officers had been given detailed information on the course in which Martinez was

travelling from California to South Dakota, and the informant repeatedly updated them on the whereabouts of Martinez, Belmontes and Valenzuela. Law enforcement were informed that Martinez and the others had to make a travel stop in Wendover, Nevada, and in Rollins, Wyoming, due to inclement weather, which would delay their arrival in South Dakota. Also, the informant was able to pro-

[¶ 43.] The plurality contends that if the state's argument were adopted, "an officer could submit an inadequate affidavit to a magistrate, which the officer knows is inadequate, and then willy-nilly go out and conduct the search because he has a "good faith" shield against any subsequent challenge." I find this contention to be without merit. Such acts clearly did not happen here. The Supreme Court emphasized in *Leon* that "the standard of reasonableness ... is an *objective* one." 468 U.S. at 919 n. 20, 104 S.Ct. at 3419 n. 20, 82 L.Ed.2d at 696 n. 20 (emphasis added). "Thus, the determination of whether the good faith exception applies in a particular case does not depend on the subjective beliefs of the officers involved." *Allen*, 211 F.3d at 978 (Gilman, J. concurring in result) (citing *United States v. Maggitt*, 778 F.2d 1029, 1035 n. 3 (5th Cir.1985) ("Because the *Leon* standard is objective, the testimony of the agent who prepared the affidavit ... is not particularly relevant."); *United States v. Gant*, 759 F.2d 484, 487–88 (5th Cir. 1985) ("[T]he determination of good faith will ordinarily depend on an examination of the affidavit by the reviewing court.")).

[¶ 44.] What did happen here is that the request for a search warrant and supporting affidavit were presented to a law trained magistrate judge who possessed a legal education and many subsequent years of judicial service. In essence, the new standard of this Court requires that a law enforcement officer such as a sheriff's deputy possess a more sophisticated understanding of this area of the law than is required of a judge who has the authority to issue the warrant to begin with. Rather than promote the use of warrants which has always been the preference of the law, this rationale as applied to the facts of this case invites abandonment of applications for a search warrant by law enforcement in the more promising hope that a warrant exception may come to the officer's rescue. This avoids the risk that a reviewing judge or appellate court may disagree with the initial judicial determination of probable cause and then go on to hold the officer could have not been acting in good faith, as with the benefit of studied hindsight, a bare plurality of this Court today holds "a judicial mind in view of the law and the circumstances could [not] have reached the same conclusion." *Barber*, 1996 SD 96 at ¶ 14, 552 N.W.2d at 820.

[¶ 45.] For the foregoing reasons, I conclude that even though the affidavit in this case did not provide enough detail about the confidential informant or any corroboration of the information by the officers involved, it was sufficient to fit within the good faith exception of *Leon*. Thus, I would affirm the denial of Belmontes' motion to suppress.

[¶ 46.] MILLER, Chief Justice, joins this dissent.

vide the precise location of where the vehicle had broken down, and finally informed law enforcement that Martinez had arrived during the night of April 3.

The informant was able to relate to the officers that Carmen Collins, Martinez's mother, had picked the men up to take them to Faith in order to have two flat tires fixed. Notably, just as predicted by the informant, Severyn located Collins' vehicle approximately four miles south of Faith. See *People v. Sousa*, 18 Cal.App.4th 549, 22 Cal.Rptr.2d 264, 273 (1993), where the court held that the events that unfolded between the time of the issuance of the anticipatory warrant and its execution and were consistent with the claims of the informant, could be used to corroborate the otherwise uncorroborated information in the affidavit provided by an informant.