#23745-r-RWS

**2006 SD 58**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellant,

  v.

ARVIN ALLEN AABERG,                    Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JULIE L. IRVINE
Magistrate Judge

* * * *

LAWRENCE E. LONG
Attorney General

STEVEN R. BLAIR
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellant.


BRYAN G. HALL of
Minnehaha County Public
  Defender's Office
Sioux Falls, South Dakota               Attorneys for defendant
                                        and appellee.

* * * *

ARGUED MARCH 22, 2006

OPINION FILED **06/28/06**

#23745

SABERS, Justice

[¶1.]	Arvin Aaberg (Aaberg) was indicted on two counts of driving while under the influence of an alcoholic beverage, second offense. Aaberg made a motion to suppress all evidence, claiming law enforcement did not have reasonable suspicion to perform an investigatory stop. The magistrate court granted the motion and issued an order suppressing the evidence. The State appeals. We reverse.

## FACTS

[¶2.]	On January 2, 2005, at approximately 10:00 p.m., Sioux Falls Police Officer Nathan Kelderman, (Kelderman), was assisting another officer in taking a report for a stolen vehicle. Kelderman was sitting in his patrol car when a vehicle approached and started to turn into the parking lot of the Stoplight Lounge (the lounge). The vehicle was driven by Aaberg. The city streets and the parking lot were covered with ice.

[¶3.]	Aaberg did not appear to commit any traffic violations while pulling into the parking lot. Nor did he drive erratically or in a manner that indicated he was impaired. Kelderman continued to observe Aaberg after he parked his vehicle. Aaberg exhibited a great deal of difficulty in attempting to exit his vehicle. He walked towards the entrance of the lounge at a very slow and cautious pace. Kelderman recalled that Aaberg's pace was far slower and more deliberate than an average person on similar conditions. Aaberg held his arms away from his body in an effort to keep his balance. At one point, Aaberg almost fell on the pavement.

-1-

Based on these observations, Kelderman believed that Aaberg was under the influence of "something."

[¶4.]     Kelderman stopped Aaberg before he reached the entrance of the lounge.  Kelderman asked Aaberg if he had been drinking or if he had a medical condition.  Aaberg responded by stating that he had a prosthetic leg.  He also stated that he had consumed "some beer" earlier that day.  Kelderman required Aaberg to accompany him to his patrol car.  Kelderman then called another officer for assistance in investigating whether Aaberg was under the influence of alcohol.  No field sobriety tests were performed on account of Aaberg's disability and the icy conditions.  At the conclusion of the investigation, Aaberg was arrested for driving under the influence of alcohol.

[¶5.]     Aaberg was indicted on two counts of driving under the influence, second offense.[1]  Prior to trial, Aaberg made a motion to suppress all evidence obtained as a result of the investigatory stop.  A hearing was held before the magistrate court on April 7, 2005.

[¶6.]     Kelderman and the officer who assisted him were the only individuals who testified at the hearing.  The State argued that the totality of the circumstances gave Kelderman a reasonable belief that criminal activity was afoot.  Aaberg, on the other hand, argued that it was unconstitutional to allow law enforcement to stop an individual simply because he was having difficulty walking on the ice.

---

1.     Aaberg was indicted on violations of SDCL 32-23-1(1) and (2).

[¶7.] The magistrate court ruled in favor of Aaberg and ordered the evidence suppressed. The court found that Kelderman did not set forth specific, articulable facts that provided reasonable suspicion to stop Aaberg. The State raises the following issue:

Whether Kelderman had reasonable suspicion to stop Aaberg.[2]

**Standard of Review**

[¶8.] A motion to suppress based on an alleged violation of a constitutional right is reviewed *de novo*. State v. Kottman, 2005 SD 116, ¶9, 707 NW2d 114, 118 (citing State v. Hess, 2004 SD 60, ¶9, 680 NW2d 314, 319). The magistrate court receives no deference for legal conclusions. *Id*. The court's factual determinations are reviewed under the clearly erroneous standard. State v. Mattson, 2005 SD 71, ¶14, 698 NW2d 538, 544-45 (citing State v. De La Rosa, 2003 SD 18, ¶5, 657 NW2d 683, 685). "Once the facts have been determined, however, the application of a legal standard to those facts" is fully reviewable by this Court. *Id*. (citing *De La Rosa*, 2003 SD 18, ¶5, 657 NW2d at 685).

**Decision**

[¶9.] The Fourth Amendment to the United States Constitution and Article VI, section 11 of the South Dakota Constitution protect individuals from

---

2. Ordinarily, a direct appeal cannot be taken from magistrate court. *See* State v. Schwaller, 2006 SD 30, 712 NW2d 869. However, a statutory exception exists in SDCL 23A-32-5 when the prosecution is appealing from orders suppressing evidence, orders requiring the return of seized property in a criminal case, or orders sustaining a motion to dismiss a complaint on statutory grounds or otherwise.

unreasonable searches and seizures.[3] The United States Supreme Court has held that individuals are entitled to Fourth Amendment protection when engaging in common functions such as walking down a city street. Terry v. Ohio, 392 US 1, 9, 88 SCt 1868, 1873, 20 LEd2d 889 (1968) (noting that the Fourth Amendment "right of personal security belongs as much to the citizens on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs"). Generally, probable cause must exist before law enforcement is permitted to seize an individual. Id. at 15-19, 88 SCt at 1876-8, 20 LEd2d 889. However, this Court and the United States Supreme Court has recognized "the narrow authority of police officers who suspect criminal activity to make limited intrusions on an individual's personal security based on less than probable cause." State v. Ballard, 2000 SD 134, ¶10, 617 NW2d 837, 840 (quoting United States v. Place, 462 US 696, 702, 103 SCt 2637, 2642, 77 LEd2d 110 (1983)). If an officer is to avail himself of the exception set forth in Terry, he must demonstrate that prior to seizing the suspect, he had reasonable suspicion that criminal activity may be afoot. Terry, 392 US at 30, 88 SCt at 1884, 20 LEd2d 889.

[¶10.] Articulating a precise definition of reasonable suspicion is "not possible." Ornelas v. United States, 517 US 690, 695, 116 SCt 1657, 1661, 134 LEd2d 911 (1996). Instead, the United States Supreme Court has described reasonable suspicion "as a particularized and objective basis for suspecting the person stopped of criminal activity[.]" Id. at 696, 116 SCt at 1657, 134 LEd2d 911.

---

3. The State does not argue nor dispute that Aaberg was "seized" within the meaning of the Fourth Amendment.

Reasonable suspicion is a "common sense, nontechnical concep[t] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." *Id.* at 696, 116 SCt at 1657, 134 LEd2d 911 (quoting Illinois v. Gates, 462 US 213, 231, 103 SCt 2317, 2328, 76 LEd2d 527 (1983)) (additional citations omitted). The inquiry into whether reasonable suspicion exists is fact sensitive; each case is to be decided on its own facts and circumstances. *Id.* at 696, 116 SCt at 1657, 134 LEd2d 911.

[¶11.]    Reasonable suspicion is a less demanding standard than probable cause. Alabama v. White, 496 US 325, 330, 110 SCt 2412, 2416, 110 LEd2d 301 (1990). As this Court explained:

> [w]hile the stop may not be the product of mere whim, caprice or idle curiosity, it is enough that the stop is based upon "specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant the intrusion."

*Mattson*, 2005 SD 71, ¶30, 698 NW2d at 548.

[¶12.]    In the present case, the magistrate court found that Kelderman had failed to sufficiently articulate the facts on which he based his suspicion. As a result, the court held that Kelderman was acting on a mere whim or out of idle curiosity. In its findings of fact, the court found that Aaberg did not "weave, stumble, or fall down." Additionally, the court concluded that Kelderman's suspicion was based solely "on Mr. Aaberg's difficulty exiting his vehicle and walking towards the establishment." The court did not make any credibility determinations.

[¶13.]    We do not find any of the court's findings of fact clearly erroneous. However, Kelderman's testimony set forth specific facts which taken together,

supported an investigatory stop of Aaberg. Kelderman testified that Aaberg was walking far slower than a normal person would on similar conditions. Kelderman also observed Aaberg having great difficulty keeping his balance. Most of Kelderman's observations were articulated during the following exchange with defense counsel:

> Q: Would you admit, sir, that as far as the explanation or a definition of the great difficulty in walking as you described it in your police report and in your grand jury testimony; would it be fair to say that his left leg would be sliding out away from him, and he'd have to hold his arms out to balance himself; would that be an accurate description?
>
> A: Yes.
>
> Q: So, you'd admit that he wasn't stumbling, or staggering, or weaving, or anything like that; is that correct?
>
> A: Staggering is a relative term. I'd say he probably was staggering a little bit to my estimation.
>
> Q: But there was not stumbling, he didn't fall down? Correct?
>
> A: He came close to falling down, but he did not fall down.

Kelderman concluded that it was more than icy conditions and that Aaberg was under the influence of "something." As mentioned, the magistrate court did not find Kelderman's testimony to be incredible. Instead, the court based its ruling on Kelderman's inability to state specific and articulable facts justifying his suspicion. The court did make a finding that Aaberg did not "weave, stumble, or fall down." However, the court's findings did not address Kelderman's testimony that Aaberg staggered, held his arms out to keep his balance, came close to falling down, and walked slower than a normal person would under similar conditions.

#23745

[¶14.]     The latter facts, coupled with the fact that Aaberg was walking into a bar during late evening hours, provide a specific and articulable basis by which a reasonable police officer could suspect Aaberg of being under the influence of alcohol.  Thus, it was not unreasonable for Kelderman to conduct an investigatory stop of Aaberg in an effort to confirm or dispel the suspicions.  We have the benefit of knowing now that some of Aaberg's conduct was due to his disability.  However, Kelderman did not know of the prosthesis at the time of the seizure and that is the relevant time in determining reasonableness.

[¶15.]     Although this is a close case, we do not agree with the magistrate court that Kelderman acted on a mere whim, hunch, or out of idle curiosity.  Kelderman presented specific and articulable facts which taken together with rational inferences from those facts, reasonably warranted the seizure.

[¶16.]     Reversed.

[¶17.]     GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶18.]     ZINTER, Justice, concurs specially.

[¶19.]     MEIERHENRY, Justice, dissents.

ZINTER, Justice (concurring specially).

[¶20.]     I join the opinion of the Court.  I write only to address the dissent's conclusion "that the officer did not present reasonable, articulable suspicion to seize Aaberg and that the officer acted on 'mere whim, caprice, or idle curiosity.'"  *Infra* ¶31.  The dissent arrives at this conclusion because it applies the incorrect standard of review; fails to consider material, historical facts contained in the record; and

-7-

fails to follow precedent requiring a consideration of the totality of the circumstances.

[¶21.]     The dissent's clearly erroneous standard of review is inapplicable in this case.  It is inapplicable because there are no credibility or evidentiary conflicts in the material facts justifying this stop.  Only one witness testified concerning the historical facts justifying the initial stop, and there is no conflict regarding those facts.  In reviewing a similar attempt to apply the clearly erroneous standard of review, the United States Supreme Court held that in this type of case "the ultimate question . . . of reasonable suspicion . . . should be reviewed *de novo.*"  Ornelas v. U.S., 517 US 690, 691, 116 SCt 1657, 1659, 134 LEd2d 911, 916 (1996).  It is only the historical facts that are entitled to clear error analysis.  *Id.* at 699, 116 SCt at 1663, 134 LEd2d at 920; *see also* U.S. v. Arvizu, 534 US 266, 275, 122 SCt 744, 751, 151 LEd2d 740, 750 (2002) (stating that the standard for appellate review of reasonable-suspicion determinations should be de novo).  The Supreme Court explained:

> The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact: "[T]he historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated."

*Ornelas*, 517 US at 696-97, 116 SCt at 1661-62, 134 LEd2d at 919 (quoting

Pullman-Standard v. Swint, 456 US 273, 289 n19, 102 SCt 1781, 1791 n19, 72

LEd2d 66, 80 n19 (1982)).

[¶22.]     Since 1999, this Court has followed these authorities and applied the

de novo standard of review in cases like this where the historical facts are not in

dispute:

> Today we modify our standard for reviewing decisions on
> warrantless searches and seizures. Our past standard--abuse of
> discretion-- conflicts with the current Fourth Amendment
> analysis employed by the United States Supreme Court. *See
> Ornelas v. United States,* 517 US 690, 116 SCt 1657, 134 LEd2d
> 911 (1996). [A]s a general matter determinations of reasonable
> suspicion and probable cause should be reviewed *de novo* on
> appeal. Having said this, we hasten to point out that a
> reviewing court should take care both to review findings of
> historical fact only for clear error and to give due weight to
> inferences drawn from those facts by resident judges and local
> law enforcement officers. *Id.* at 699, 116 SCt at 1663.

State v. Hirning, 1999 SD 53, ¶9, 592 NW2d 600, 603. *See also* State v. Muller,

2005 SD 66, ¶12, 698 NW2d 285, 288 (de novo review of reasonable suspicion); State

v. Lockstedt, 2005 SD 47, ¶14, 695 NW2d 718, 722 (same); State v. Ballard, 2000

SD 134, ¶9, 617 NW2d 837, 840 (same). Because only one witness testified

concerning the justification for the stop, and because there is no conflicting evidence

regarding those historical facts, the clearly erroneous standard of review does not

apply.

[¶23.]     The dissent also holds that the magistrate judge was not required to

make findings on a number of relevant historical facts. Thus, the dissent concludes

that the magistrate was not required to even mention or analyze the undisputed

facts "that Aaberg staggered, held his arms out to keep his balance, came close to

falling down, and walked slower than a normal person." *Infra* ¶29. The reasoning used to justify this rather remarkable position is that factfinders are not "required . . . to enunciate [their] opinion on the credibility and weight of each answer of a witness." *Id.* The dissent also surmises that the factfinder failed to even consider these relevant facts because she "apparently" "did not find persuasive the officer's testimony that Aaberg 'probably was staggering a little bit.'" *Infra* ¶30. However, there was no adverse credibility finding with respect to the officer, and there was no conflicting evidence concerning the officer's observation of substantial evidence of impairment.[4] Therefore, even if we were to apply the clearly erroneous standard of review, the magistrate's decision, which fails to even acknowledge such relevant evidence, demonstrates clear error.

[¶24.] The dissent concedes this point, acknowledging that the application of the clearly erroneous standard requires consideration of "the entire record." *Infra*

---

4. Among other things, the officer testified:

(1) he "observed [Aaberg] exhibit signs that he had great difficulty getting out of the vehicle, and that he was very slow. . . ."

(2) in walking, "[Aaberg] was very slow compared to a gait of a person even on those conditions and just the total way he he was walking was apparent to me that I felt he was under the influence of something."

(3) there were "signs that he couldn't keep his balance very well while he was walking. . . ."

(4) Aaberg's "left leg would be sliding out away from him, and he'd have to hold his arms out to balance himself. . . ."

(5) Aaberg "probably was staggering a little bit to my estimation."

(6) Aaberg "came close to falling down, but he did not fall down."

¶27 (citing State v. Belmontes, 2000 SD 115, ¶9, 615 NW2d 634, 637). *See also* Even v. City of Parker, 1999 SD 72, ¶9, 597 NW2d 670, 674 ("Clear error exists only when upon a review of *all* the evidence in the record, we are left with a definite and firm conviction a mistake has been made.") (emphasis added); Sopko v. C&R Transfer Co., Inc., 1998 SD 8, ¶7, 575 NW2d 225, 229 ("Even when substantial evidence supports a finding, reviewing courts must consider the evidence *as a whole* and set it aside if they are definitely and firmly convinced a mistake has been made.") (emphasis added). Yet the dissent would affirm a decision that makes no mention of the driver's problems of staggering, balancing, walking, and almost falling. Because there is no indication that these material and relevant facts were even considered in the magistrate's analysis, there is clear error as a matter of law. Stokes v. Christenson, 51 SD 365, 213 NW 950 (1927) (finding error where material and competent evidence was not considered). *See also* Sather v. C.I.R., 251 F3d 1168, 1178 (8thCir 2001) (reversing for declining to consider pertinent facts); Van Scoten v. C.I.R., 439 F3d 1243, 1252 (10thCir 2006) (stating that the lower court's factual findings may be reversed "for clear error when it fails to consider relevant, contrary and undisputed evidence that is material").

[¶25.] Finally, the dissent itself errs in failing to consider the defendant's staggering, difficulty in balancing, almost falling, and walking differently than a normal person under similar circumstances. The dissent's rationale for failing to consider these material facts is that we only need to consider the "facts, as determined by the magistrate." *Infra* ¶28. However, this approach violates the well settled requirement that, in making a reasonable suspicion determination, we must

"[l]ook at the *'totality of the circumstances'* of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." State v. Kenyon, 2002 SD 111, ¶15, 651 NW2d 269, 273-74 (quoting *Arvizu*, 534 US at 273, 122 SCt at 750-51, 151 LEd2d at 749 (quoting *United States v. Cortez,* 449 US 411, 417-18, 101 SCt 690, 694-95, 66 LEd2d 621, 628-29 (1981))). *See also* State v. Scholl, 2004 SD 85, ¶9, 684 NW2d 83, 86 ("Whether an anonymous tip suffices to give rise to reasonable suspicion depends on both the quantity of information it conveys as well as the quality*,* or degree of reliability, of that information, viewed under the totality of the circumstances.").

[¶26.]     The totality of the evidence in this case comes from one witness who testified without contradiction "that Aaberg staggered, held his arms out to keep his balance, came close to falling down, and walked slower than a normal person would under similar circumstances" as he walked from his car to the bar at 10:00 p.m. that evening. *See supra* ¶13 and *infra* ¶29. As the majority points out, these undisputed facts, taken together with the rational inferences drawn therefrom, unquestionably established a particularized and objective basis for a reasonable suspicion to believe that Aaberg was under the influence. Therefore, considering the totality of the evidence in the record under either standard of review, the magistrate erred in concluding that the officer did not have reasonable suspicion to perform the initial limited stop of Aaberg.

#23745

MEIERHENRY, Justice (dissenting).

[¶27.] In 1999 in *State v. Hirning*, we set forth the standard of review of a lower court's determination of reasonable suspicion and probable cause as follows:

> We review fact findings under the clearly erroneous standard. Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo. . . . "[A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."

1999 SD 53, ¶8-9, 592 NW2d 600, 603 (quoting Ornelas v. United States, 517 US 690, 699, 116 SCt 1657, 1663, 134 LEd2d 911 (1996), and abandoning the abuse of discretion standard in light of *Ornelas*) (other citations omitted). Thus, our review starts with the magistrate court's findings of fact and an inquiry as to whether the findings are clearly erroneous. We have said:

> A trial court's findings of fact from a suppression hearing *must be* upheld unless they are clearly erroneous. This Court's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made. In making this determination, we review the evidence in a light most favorable to the trial court's decision.

State v. Belmontes, 2000 SD 115, ¶9, 615 NW2d 634, 637 (citations omitted) (emphasis added).

[¶28.] In applying this standard, the majority first determines that the magistrate's findings of fact are not clearly erroneous. I agree. The majority then determines that the facts are sufficient to constitute reasonable suspicion. This is

-13-

where I disagree with the majority. The facts, as determined by the magistrate, do not constitute reasonable suspicion as a matter of law. Observing a person having difficulty walking on an icy parking lot toward a bar at 10:00 p.m. without any indication of impaired driving does not constitute reasonable suspicion as a matter of law. The way the majority reaches that conclusion is by substituting its spin on the transcribed testimony of the arresting officer. To reverse the magistrate's decision, the majority focuses on one equivocal answer by the officer to a question asked by the defense. The officer agreed that Aaberg's left leg was "sliding out away from him" and that he had "to hold his arms out to balance himself." However, when asked, "So, you'd admit that he wasn't stumbling, or staggering, or weaving, or anything like that," the officer gave the following ambivalent answer: "Staggering is a relative term, *I'd say he probably was staggering a little bit to my estimation.*" (Emphasis added). In weighing the evidence and judging the credibility of the testimony, the magistrate disregarded the officer's statement concerning staggering and found as follows:

> 5. Officer Kelderman observed Mr. Aaberg disembark from the vehicle and slowly walk approximately 30 feet on the very icy surface with great difficulty towards the front doors of the Stoplight Lounge.
> 6. Officer Kelderman did not observe Mr. Aaberg weave, stumble, or fall down.

[¶29.] The majority determines that because the magistrate did not make a specific finding that Officer Kelderman's testimony was not credible, she should have made an additional finding "that Aaberg staggered, held his arms out to keep his balance, came close to falling down, and walked slower than a normal person." We have never required a factfinder to enunciate her opinion on the credibility and

weight of each answer of a witness, as the majority seems to suggest here. We have consistently deferred to the factfinder because of the factfinder's advantage of seeing and hearing the witnesses and therefore being in a better position to weigh the evidence and credibility of a particular answer in light of all the testimony. Enhancing the magistrate's findings based on the cold record seems inappropriate given our clearly erroneous standard of review.

[¶30.]    In addition to findings 5 and 6 referenced above, the magistrate also made the following findings regarding the officer's observations:

3.  The Officer Kelderman did not observe any signs of impaired driving.
4.  The surface conditions, for both the city streets and parking lot, were very icy.

. . .

7.  Based solely on Mr. Aaberg's difficulty exiting his vehicle and walking towards the establishment, Officer Kelderman concluded that Mr. Aaberg was under the influence of "something." Officer Kelderman was not performing his community caretaker role; he had already concluded prior to seizing Mr. Aaberg that he was under the influence of "something."

Based on a review of the record, I am not left with a definite and firm conviction that any of the magistrate's findings were clearly erroneous. All conflicts in the evidence must be resolved in favor of the magistrate's findings. *Belmontes*, 2000 SD 115, ¶9, 615 NW2d at 637. Apparently, the magistrate did not find persuasive the officer's testimony that Aaberg "probably was staggering a little bit." Further, that statement by the officer does not render clearly erroneous the magistrate's finding of fact that "Officer Kelderman did not observe Mr. Aaberg weave, stumble, or fall down."

[¶31.]	The record here contains evidence to support the magistrate court's findings, and we should not disturb the findings of fact on appeal.  Further, we must "give due weight to inferences drawn from those findings" by the magistrate court.  *Hirning*, 1999 SD 53, ¶9, 592 NW2d at 603 (quoting *Ornelas*, 517 US at 699, 116 SCt at 1663, 134 LEd2d 911).  Therefore, based on the findings of fact and the inquiry as to whether those facts constitute reasonable suspicion, I would affirm the magistrate's conclusion of law that the officer did not present reasonable, articulable suspicion to seize Aaberg and that the officer acted on "mere whim, caprice, or idle curiosity."